CHASEZ, Judge.
This suit arose out of the multi-automo-bile collision in the South-bound neutral .-ground traffic lane of Causeway Boulevard, Just South of Lake Pontchartrain Causeway -toll plaza, in Jefferson Parish.
Three vehicles are involved: The Nagim ■vehicle, insured by Employers’ Liability Assurance Corporation, Ltd.; the Bonnette vehicle, insured by United States Fire Insurance Company; and the Breckenridge vehicle, insured by Allstate Insurance Com-pany.
The Nagim vehicle was operated by Ken-neth Nagim, and Patricia Quarrella, Eugenie Charbonnet, Bobby Dufrechau, and Mary Mell Melancon were passengers. The IBonnette vehicle was operated by Mr. Mil-bon Bonnette, and Mrs. Bonnette, the Bon-nettes’ two minor children, Gregory and Gwen, and Mr. and Mrs. Eldern Ray Sanders were passengers. Mr. Breckenridge was the sole occupant of his vehicle.
Milbon Bonnette filed suit on his own behalf and for the use and benefit of his minor children against the insurers of Nagim, Breckenridge and, to the extent that the action was brought for the use and benefit of his minor children, against his own insurer.
Mrs. Dorothy Pinion Bonnette and Mr. and Mrs. Eldern Ray Sanders sued these same defendants in separate actions.
Mrs. Salvatore Tornabene, widow of Dennis J. Melancon, Sr., individually, and as natural tutrix of her minor daughter, Mary Mell Melancon, sued the Nagim and Bonnette insurers.
Nagim’s insurer filed third-party petitions against the Bonnette and Breckenridge insurers, and the Breckenridge insurer filed third-party petitions against the Nagim and Bonnette insurers.
All pleadings of all parties were answered by all defendants. All cases were consolidated, and all damages were stipulated. The only issue tried was that of liability. Separate judgments were rendered by the court.
The court below rendered judgment in favor of all plaintiffs against Employers’ Liability Assurance Corporation, Ltd., the insurer of the Nagim vehicle, and released all other defendants and third-party defendants.
The defense urged here is based upon an alleged absence of negligence on the part of the defendant and, alternatively, on contributory negligence.
The allegations of error made by appellant seem to be simply that the findings and conclusions of the trial court are unsupported in the evidence. We do not agree.
*760 The lower court in its reasons for judgment stated the following:
“The multiple accidents, out of which these consolidated cases arise, occurred on Causeway Boulevard a short distance from the South end of the Causeway in the lanes for traffic headed toward the River from the bridge.
“Young Nagim made a left turn from the neutral ground area on Causeway Boulevard, into the lane nearest the neutral ground toward the River. Bonnette, who had just come off the bridge, struck the Nagim vehicle just before or a few seconds after Nagim had completed his turn.
“Breckenridge was proceeding off the bridge behind two other vehicles. One of the cars ahead of him pulled into the right lane and his testimony was that the car which remained in the left lane suddenly swerved to the right. When the car swerved, Breckenridge immediately saw the Bonnette car, which was stopped in the left lane after striking the Nagim car, in the roadway ahead of him. He applied his brakes, attempted to avoid the accident, was unable to do so and struck the Bon-nette car. One or more accidents followed, which are not at issue here.
“The accidents occurred at night in rainy weather. Visibility of all parties was apparently somewhat restricted by the rainy weather.
“The burden of proof was on the driver of the Nagim vehicle to establish by the preponderance of the evidence that he could safely execute the left turn. This burden has not been carried.
“While there is some evidence that the Bonnette vehicle may not have had its head lights burning or that the lights were weak, the Court considers the evidence to have established that the Bonnette vehicle was proceeding within the speed limit, its lights were in proper working condition and were turned on and that the driver thereof had no reason to anticipate the Nagim vehicle turning directly into^his path.
“The Court believes froni the evidence, that Breckenridge, was overtaking the car ahead of him when the car suddenly pulled to the right to avoid the Bonnette car. However, there is no evidence that Breckenridge was traveling at an excessive rate of speed or that he could or should have seen the Bonnette car in time to avoid striking it. There is no doubt but that Breckenridge was faced with a sudden emergency when the car immediately ahead of him pulled to the right and he first had an opportunity to see the stopped Bonnette vehicle in his path.
“There is no issue of contributory-negligence in the suit on behalf of Mary Mel Melancon.
“The quantum of damages was stipulated by the parties and judgment is rendered accordingly.”
The record establishes that the collision, occurred about 6:15 p. m., on Sunday, November 10, 1963; that it was a cold, dark,, and rainy night; that Causeway Boulevard at the point where the accident occurred was surfaced with asphalt and consisted of' 2 North-bound and 2 South-bound lanes, separated by a neutral ground.
The Nagim vehicle crossed the Northbound lane, stopped in the neutral ground, and then made a slow left turn into the-South-bound neutral ground traffic lane. Seconds after making this turn the Nagim-vehicle was struck from behind by the Bon-nette vehicle. The Nagim vehicle came to-rest on the righthand shoulder of the road some 90 feet from the point of impact. The Bonnette vehicle came to rest in the neutral ground lane. The Breckenridge vehicle collided with the rear of the Bonnette vehicle seconds later.
Kenneth Nagim, the driver of the Nagim-vehicle, testified that he came to a full stop- *761 in the neutral ground with his car on a •slight Southwest slant; that he looked to the North (his right) to see if any cars ■were coming; that he had a clear view of the roadway and could see for about a city block, but saw nothing; that he asked his ■passengers to also look and they saw nothing; that he then made a slow left turn and was struck from behind shortly after completing the turn. He admitted, on ■cross-examination, that the toll plaza may have obstructed his vision a little.
The 4 passengers in the Nagim vehicle .generally corroborated Kenneth Nagim’s •testimony.
Milbon Bonnette testified that he was going about SO miles per hour when he first saw the Nagim vehicle pull into his path; that he was alongside the toll office when Tie first saw the Nagim vehicle pull out in front of him; that after the accident he ■measured the distance from the center of the toll office to the South side of the turnaround as 101 feet; that he could not ■swerve right because of other traffic; that his headlights were on at all times; that his brakes and tires were in good condition; that he applied his brakes but was unable to stop because the road was wet, and that his automobile went into a slide.
Mrs. Eldern Sanders testified that she first saw the Nagim vehicle when they were just past the toll plaza; thát the headlights of both vehicles were on; that she did not remember whether or not there were any ■other vehicles in front of or alongside the Bonnette vehicle; that Bonnette applied the brakes; that her estimate of their speed on impact was about 20 miles per hour.
Mrs. Bonnette and Mr. Sanders were both sleeping and did not see the collision.
Vincent F. Scaccia, a disinterested witness, testified that he saw the collision; that when Nagim pulled out of the turnaround into the South-bound traffic lanes, he, Scaccia, drove his vehicle into the spot Nagim vacated; that he could see the lights ■of traffic coming from the Causeway bridge; that the Bonnette vehicle was one of those vehicles; that Bonnette passed right in front of him; that Bonnette was not travelling unusually fast, Scaccia’s estimate being somewhere between 40 and 55 miles per hour; that he first saw the Bon-nette car when it was 15 to 30 feet away from him and that he did not notice any vehicle before, beyond or abreast of the Bonnette car.
Dennis Scaccia was about 12 years old at the time of the accident. His version of the accident is somewhat garbled and does not accord with any other testimony in the record.
Trooper Marion F. Moore, of the State Police, the investigating officer, testified that he had been in the Administration Building adjacent to the toll plaza and heard the first crash; that he actually witnessed the second crash; that the debris from the first crash was about 3 car lengths, or 45 feet South of the South edge of the turnaround; that the speed limit in the vicinity of the crash was 50 miles per hour, that he makes the same turn himself several time a week and that in doing so a driver can see approximately Yiotii of a mile to the North.
William Breckenridge testified relative to the second crash in which he was involved, that as he came across the Causeway he was following two cars; that on coming off of the bridge proper onto the 4-lane roadway one of the cars preceding him took the right lane and one took the left lane; that he followed the vehicle in the left neutral ground lane; that suddenly the driver of that car hit the brakes and cut sharply into the right lane in order to avoid the Bonnette wreckage; that he then first saw the Bonnette car; that he was travelling about 40 miles per hour; that at the time he had been overtaking the vehicle in the right lane and could not cut to the right; that he put on his brakes, saw that he was not going to be able to stop, attempted to hop the neutral ground but was unable to and slid into the rear of the Bonnette wreckage.
*762 Certainly there is ample support in this record for the conclusions of the trial court that Nagim was negligent in attempting to execute this left turn in a heavily trafficked area when he could not safely do so; that the Bonnette vehicle had its headlights on, and that Bonnette was only 100 feet away from Nagim and certainly within Nagim’s range of vision when Na-gim suddenly entered the right-of-way, creating an emergency situation which Bon-nette was unable to avoid.
In the case of United States Fidelity & Guaranty Co. v. Bergeron, La.App., 148 So.2d 162, it was held, as follows:
“It is hornbook law that a left hand turn across a highway constitutes one of the most hazardous maneuvers that a driver is called upon to perform and he must initially ascertain by careful observation that the maneuver can be executed safely without danger to normal overtaking and on-coming traffic and must yield right-of-way to such vehicles, (citing cases.)
“The burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and to show that he was free from negligence.” (citing cases.)
There is some dispute as to ,the actual speed of Mr. Bonnette but the record fully supports the conclusion that Mr. Bon-nette was not speeding.
The record also supports the conclusion of the court that Breckenridge was in the process of overtaking a car in the right lane when the car in front of him in the left neutral ground lane suddenly hit the brakes and pulled to the right to avoid the Bonnette car; that the Breckenridge car was not travelling at an excessive rate of speed, and that Breckenridge also was faced with a sudden emergency when he first had an opportunity to see the Bonnette vehicle in his path.
For the foregoing reasons the judgment of the court below is affirmed and all' costs of this appeal shall be paid by Employers’ Assurance Corporation, Ltd., appellant. The judgments rendered by the-court in cause No. 2048, 182 So.2d 762, cause No. 2049, 182 So.2d 763, and cause No. 2050, 182 So.2d 763, shall likewise be affirmed for the reasons hereinabove set forth.
Affirmed.